

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0887-21

## EX PARTE MICHAEL LOWRY, Appellant

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FIRST COURT OF APPEALS
## HARRIS COUNTY

**HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., and RICHARDSON, NEWELL, WALKER, and MCCLURE JJ., joined. YEARY, KEEL, and SLAUGHTER JJ., concurred.**

## O P I N I O N

Section 43.262(b) of the Penal Code prohibits a person from knowingly possessing, accessing with intent to view, or promoting visual material that depicts the lewd exhibition of the genitals or pubic area of an unclothed, partially clothed, or clothed child who is younger than 18 years old when the visual material was created and if the visual material appeals to the prurient interest in sex and has no serious literary, artistic, political, or scientific value. We granted review to decide whether Section 43.262(b) is facially unconstitutional because it restricts too much protected speech and whether it is

overbroad for violating the rights of too many third parties. The court of appeals held that Section 43.262(b) is unconstitutional on both bases. We will reverse the judgment of the court of appeals and remand this case to the court of appeals to address the remaining points of error.

## I. BACKGROUND

The record has not been fully developed because this case is about a pretrial writ application. But according to the probable-cause affidavit, investigators from the Montgomery County District Attorney's Internet Crimes Against Children Task Force conducted an undercover operation. Appellant became a person of interest, and investigators eventually executed a search warrant and found child pornography on his cell phone. A grand jury indicted Appellant under Section 43.262(b) for knowingly possessing visual material—a photograph, depicting the lewd exhibition of the pubic area of a clothed child, who was younger than 18 years old when the photograph was created, and the photograph appealed to the prurient interest in sex and had no serious literary, artistic, political, or scientific value.

### A. Pretrial Application for a Writ of Habeas Corpus, Notice of Additional Evidence & the State's Response

i.    Pretrial Writ Application

Appellant filed a pretrial writ application, arguing that Section 43.262 is unconstitutional for five reasons: (1) it is an impermissible content-based restriction on protected speech that fails strict scrutiny, (2) it does not regulate obscenity, (3) it is overbroad because the statute includes, within its plainly legitimate sweep, a substantial

amount of protected speech, (4) it is void for vagueness, and (5) it violates Article I, Section 8 of the Texas Constitution.[1] We address each claim in turn.

### a. Appellant's Argument That Section 43.262(b) Regulates Protected Conduct and Fails Strict Scrutiny

Appellant argued that Section 43.262(b) fails strict scrutiny because, although the State has a compelling interest in regulating obscenity and child pornography, Section 43.262(b) regulates "child erotica," which is a distinct category of speech. He also argued that, even if the State had met its burden to show it has a compelling interest in regulating child erotica, it did not show that Section 43.262(b) furthers that interest or that Section 43.262(b) is narrowly tailored.

### b. Appellant's Argument That Section 43.262(b) Does Not Regulate Obscenity

Appellant asserted that Section 43.262(b) does not regulate obscenity because it did not require that the visual material must be "patently offensive." Appellant noted that an earlier version of the bill included that element but that the legislature removed it before the bill's final passage. He also argued that the legislature should have included a scienter requirement for the visual material because, as currently written, a person is guilty even if they did not know that the visual material is prohibited under Section 43.262(b).

---

[1] Article I, Section 8 guarantees that "[e]very person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege; and no law shall ever be passed curtailing the liberty of speech or of the press." TEX. CONST. art. I, § 8.

### c. Appellant's Argument That Section 43.262(b) is Unconstitutionally Overbroad

Appellant argued that the statute is overbroad because "most Instagram 'social influencers' under the age of 18, who in reality do nothing more than post provocative, but clothed, pictures of themselves online for their millions of followers" would be guilty under Section 43.262(b). In a Notice of Additional Evidence, Appellant cited the Netflix documentary, *Cuties*, which he asserted, "is a French film about an 11-year-old Senegalese immigrant who joins a dance group" and includes "a minute-long scene with close-ups of the girls in the dance group gyrating their thighs, butts and stomachs . . . ."[2] Appellant also cited an indictment out of Tyler County charging Netflix under Section 43.262(b) for distributing *Cuties*. These examples, Appellant argued, showed that his overbreadth claim is not based on mere hypotheticals but real-world happenings. Appellant further observed that "[t]he film's writer and director, Maïmouna Doucouré, said that 'Cuties' is a critique of the hypersexualization of young girls" and that it is meant to protect children, not harm them.

### d. Appellant's Argument That Section 43.262(b) is Void for Vagueness

Appellant argued that Section 43.262(b) is void for vagueness because a person of ordinary intelligence is not on notice as to what it prohibits. For support, he cited the Netflix indictment and his belief that the Tyler County District Attorney unwittingly

---

[2] Appellant included an article to his filing from the Texas Tribune describing the content of *Cuties*.

violated Section 43.262(b) when he admitted to knowingly accessing *Cuties* with the intent to view.[3]

### ii.    State's Response

The State began its response by discussing the black-letter law of the overbreadth doctrine, but it did not address the specifics of Appellant's claim. It correctly noted that the defendant bears the burden to show that the law is unconstitutionally overbroad. The State argued that Section 43.262(b) restricts only unprotected speech, obscenity, and child pornography, and it relied on courts of appeals decisions holding that the "Possession or Promotion of Child Pornography" and the "Promotion of a Sexual Performance by a Child" statutes are constitutional.[4]

## B.    The Hearing

### i.    Appellant's Arguments

At the hearing, Appellant argued that Section 43.262(b) is facially unconstitutional because it restricts too much protected speech, it is overbroad and violates the rights of too many third parties, and it is void for vagueness. He also responded to the State's argument that Appellant bore the burden of proof.

Appellant contended that strict scrutiny applies because Section 43.262(b) is a content-based restriction, meaning that the burden of proof is on the State to rebut the

---

[3] Although Appellant indicated that he would argue that Section 43.262(b) is unconstitutional under Article I, Section 8 of the Texas Constitution, he never made arguments regarding the issue.

[4] The State briefed the Article I, Section 8 issue, but we do not discuss its arguments here because Appellant did not brief the issue.

presumption that the statute is unconstitutional. According to the Appellant, the State could rebut that presumption only by showing that it has a compelling interest in regulating child erotica, that Section 43.262(b) furthers that interest, and that Section 43.262(b) is narrowly tailored to further the State's compelling interest. Appellant also argues that the statutes and courts of appeals cases relied on by the State are distinguishable because this case does not involve the "Possession of Child Pornography" or "Promotion of a Sexual Performance" statutes, and the court of appeals' opinions addressed those statutes, not the one at issue here.

ii.     State's Arguments

Although the State did not address Appellant's overbreadth claim in its response to his pretrial application, it did at the hearing. It argued that knowingly accessing with intent to view or promoting *Cuties* is not a crime because the documentary has some political, literary, and artistic value. The judge reminded the State that a Tyler County grand jury disagreed, indicting Netflix under Section 43.262(b), and the State responded that the Harris County District Attorney's Office disagrees with the Tyler County District Attorney's interpretation.

The State also argued that child erotica is obscene and is child pornography, both of which the State has a compelling interest in regulating. Therefore, it continued, Section 43.262(b) should be considered an expansion of existing obscenity and child-pornography laws. The State also argued that the statute is narrowly tailored because it is "limited to images or visual materials that appeal to the [prurient] interest [in] sex and have no culturally redeeming value . . . ." According to it, these limitations narrow the

scope of the statute to only depictions involving obscenity, child sexual abuse, and child exploitation.

The State conceded that adding an additional scienter requirement reduces the vagueness of a statute, but it asserted that the lack of a scienter requirement does not necessarily mean a statute is unconstitutionally vague. It argued that the statutory language of Section 43.262(b) is not void for vagueness because it is specific enough to give an ordinary person fair notice of what the statute proscribes.

iii.    The Ruling

At the end of the hearing, the trial court orally denied Appellant's pretrial writ application. It concluded that Section 43.262(b) is a content-based restriction and that it passes strict scrutiny. It found that Section 43.262(b) regulates only obscenity and child pornography, that the State has a compelling interest in regulating obscenity and child pornography, and that Section 43.262(b) furthers that interest by preventing child sexual abuse and exploitation.

The trial court also concluded that Section 43.262(b) regulates obscenity even without a "patently offensive" element because visual material under Section 43.262(b) is necessarily patently offensive and that the "knowing" requirement sufficiently narrowed Section 43.262(b)'s application because it applies to the conduct *and* the circumstances of the offense.

Appellant asked for a ruling on the vagueness part of his argument, and the trial court denied the pretrial writ application on that basis also. The trial court subsequently signed a written order denying the application.

## II. COURT OF APPEALS

The court of appeals' analysis proceeded in five parts: (1) the First Amendment applies to the visual materials proscribed by Section 43.262(b) because they are inherently expressive, (2) the visual material is not removed from First Amendment protection because it regulates a protected category of speech, child erotica, not just obscenity or child pornography, (3) strict scrutiny applies because Section 43.262(b) is a content-based restriction, (4) Section 43.262(b) does not survive strict scrutiny, and (5) Section 43.262(b) is unconstitutionally overbroad.

### A. Court of Appeals' Conclusion That the First Amendment Applies to Section 43.262(b)

i. The Visual Material Proscribed by Section 43.262(b) Is Inherently Expressive

The court of appeals concluded that visual material is inherently expressive based on this Court's decision in *Thompson*. *Ex parte Lowry*, 639 S.W.3d 151, 164-65 (Tex. App.—Houston [1st Dist.] 2021) (relying on *Ex parte Thompson*, 442 S.W.3d 325, 334 (Tex. Crim. App. 2014)). It found that *Thompson* controls because this Court held that photographs and recorded visual materials are inherently expressive without the need for a case-by-case determination. *Id.* at 164. It also reasoned that the visual material prohibited by Section 43.262(b) is expressive because Section 43.262(b) proscribes only visual material that conveys a particular message. *Id.* at 165.

ii. Section 43.262(b) Does Not Proscribe Only Obscenity

According to the court of appeals, the United States Supreme Court stated in *Miller* that material is not obscene unless (1) the work, taken as a whole, appeals to the

prurient interest in sex, (2) the material portrays sexual conduct specifically defined by the applicable state law in a patently offensive way, and (3) the material, taken as a whole, does not have serious literary, artistic, political, or scientific value. *Id.* at 162 (citing *Miller v. California*, 413 U.S. 15, 24 (1973)). The court of appeals added that Section 43.21(1) defines obscene material for state-law purposes and that the definition includes a patently offensive requirement but observed that Section 43.262(b) does not include a patently offensive element. *Id.*

The court of appeals also stated that, although Section 43.262(b) does not include a patently offensive element, the legislature included that element in other statutes, which suggests that Section 43.262(b) is not directed at regulating obscenity. *Id.* (citing TEX. PENAL CODE §§ 43.21(a) (definition of obscenity includes a "patently offensive" element), 43.22 (offense of obscene display or distribution), 43.23 (offense of obscenity), 43.24 (using the *Miller* factors to define "harmful material" in the "Sale, Distribution, or Display of Harmful Material to Minor" statute)); *see Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 240 (2002) (noting that the Child Pornography Prevention Act of 1996 is not directed at obscenity because Congress proscribed those materials in a separate statute). The court of appeals concluded that "[h]ad the legislature wanted to prohibit obscene visual material depicting children, the legislature knew how to accomplish that purpose." *Id.* at 163.

The court of appeals acknowledged that Section 43.262(b) is in Chapter 43, Subchapter B, titled "Obscenity," but it explained that the location of a criminal offense in the Penal Code does not control the reach of the law; the text does. *Id.* at 162.

iii.    <u>Section 43.262(b) Does Not Proscribe Only Child Pornography</u>

The court of appeals found the text of Section 43.262(b) ambiguous about whether it proscribes child pornography. It reasoned that, unlike other criminal offenses, Section 43.262(b) does not expressly state that it applies to child pornography. It also observed that the visual material prohibited by Section 43.262(b) is broader than the definition of "sexual conduct" in the child-pornography statute. Specifically, it stated that the definition of "sexual conduct" does not include the "lewd exhibition of the pubic area of a clothed child."

The court of appeals also examined the legislative history. It noted that the Senate's bill analysis states that Section 43.262(b) was enacted to close a loophole in existing laws by regulating child erotica. According to the court of appeals, the bill analysis is evidence that the legislature considered child erotica to be distinct from child pornography. It also observed that it is consistent with at least one expert's testimony that child erotica is "'a picture of a child either partially clothed or nude' that is not illegal."[5] *Wise v. State*, 364 S.W.3d 900, 907 (Tex. Crim. App. 2012). The court of appeals concluded its analysis by noting that the State provided no authority to support its arguments that Section 43.262(b) regulates only obscenity and pornography.

------

[5] *Lowry*, 639 S.W.3d at 164 (citing Senate Research Ctr., Bill Analysis, Tex. H.B. 1810, 85th Leg., R.S. (2017); TEX. PENAL CODE §§ 43.25 (sexual performance of a child; defining "sexual conduct"), 43.26 (possession of child pornography; incorporating definition of "sexual conduct" from Section 43.25); *Wise*, 364 S.W.3d at 907 n.6 (the State's expert defined child erotica images as a picture of a child either partially clothed or nude that is not illegal); *Bolles v. State*, No. 07-08-0304-CR, 2010 WL 539684, at *2 (Tex. App.—Amarillo Feb. 16, 2010, pet. ref'd) (mem. op., not designated for publication)).

**B. Court of Appeals' "Restricts Too Much Protected Speech" Claim Analysis**

i. <u>Strict Scrutiny Applies</u>

The court of appeals stated that strict scrutiny applies when a law is a content-based restriction, and the United States Supreme Court has explained that "[a] law is content-based if it 'targets speech based on its communicative content,'" *Lowry*, 639 S.W.3d at 165 (quoting *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015)). The court of appeals also noted that the Court of Criminal Appeals has stated that "[i]f it is necessary to look at the content of the speech in question to decide if the speaker violated the law, the regulation is content-based." *Id.* (quoting *Ex parte Lo*, 424 S.W.3d 10, 15 n.12 (Tex. Crim. App. 2013)). Based on that authority, the court of appeals concluded that "the sexually-related nature and subject matter of the visual material sought to be proscribed . . . renders the statute content based." *Id.* (citing *Thompson*, 442 S.W.3d at 348).

The court of appeals explained that, under the strict-scrutiny standard of review, "content-based laws that regulate expression 'are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests.'" *Id.* at 166. According to it, "a regulation is 'narrowly drawn' if it uses the least restrictive means of achieving the government interest," and it noted that the governmental interest must be compelling to justify suppressing protected speech. *Id.* The court of appeals also observed that a governmental interest is not

compelling unless the government identifies an "'actual problem in need of solving.'" [6]

*Id.* (quoting *United States v. Playboy Entm't Grp. Inc.*, 529 U.S. 803, 813 (2000)).

ii.     Section 43.262(b) Does Not Survive Strict Scrutiny

The court of appeals held that Section 43.262(b) did not survive strict scrutiny

because the State did not rebut the presumption of unconstitutionality. Its analysis

focused on the compelling-interest requirement. According to the court of appeals, the

State failed to show that it has a compelling interest in regulating child erotica, a category

of speech distinct from obscenity and child pornography. The court of appeals relied on

the legislative history and the United States Supreme Court's decision in *Brown*.

The court of appeals cited the House Criminal Jurisprudence Committee and

Senate Research Center bill analyses. It noted that the Jurisprudence Committee bill

analysis states that "'there is currently no disincentive for some criminals to possess or

promote certain images portraying children depicted in a sexually suggestive manner'"

and that the bill sought "'to address this issue by creating the offense of possession or

promotion of lewd visual material depicting a child.'" *Lowry*, 639 S.W.3d at 166 (quoting

House Comm. on Crim. Jurisprudence, Bill Analysis, Tex. H.B. 1810, 85th Leg., R.S.

(2017)). It also noted the bill analysis prepared by the Senate Research Center:

> Current state law does not contain statutes that criminalize the possession
> or promotion of child erotica images. Child erotica images portray an

---

[6] In its recitation of the law for Appellant's "restricts too much protected speech" claim, the court of appeals referenced overbreadth facial challenges in error. In a "restricts too much protected speech" claim, the question is whether the regulation can survive strict scrutiny, not whether it is overbroad because it violates the rights of too many third persons. *See R.A.V.*, 505 U.S. at 381 n.3 (distinguishing between a "restricts too much protected speech" claim and the narrowly tailored requirement versus a technical overbreadth claim).

> unclothed, partially[ ] clothed, or clothed child depicted in a sexually explicit manner indicating the child has a willingness to engage in sexual activity. Investigations of child pornography cases have revealed many child pornography collections also include child erotica images. In some cases, only child erotica images are discovered. In such instances, state charges cannot be pursued.

*Id.* at 163 (quoting Senate Research Ctr., Bill Analysis, Tex. H.B. 1810, 85th Leg., R.S. (2017)). The court of appeals concluded that, even though investigations have shown that people who possess child pornography often also possess "child erotica," the legislative history does not address whether "child erotica," specifically "visual material depicting the lewd exhibition of the pubic area of a clothed child—not child pornography—is an actual problem causing the sexual abuse or exploitation of children . . . ." *Id.* at 164-67.

The court of appeals also concluded that the State failed to show a direct causal connection between the visual material proscribed by Section 43.262(b) and protecting children from abuse and exploitation. *Id.* at 167. The court of appeals explained that the "direct causal connection" requirement comes from the United States Supreme Court's *Brown* decision. *Id.* It stated that the issue in *Brown* was whether California's law banning the sale of violent video games to minors without parental consent passed strict scrutiny. *Id.* The court of appeals asserted that the United States Supreme Court held that the statute did not survive strict scrutiny because the government could not "show a direct causal link between violent video games and harm to minors." *Id.* It noted that the government argued that the California legislature's "predictive judgment that such a link exists, based on competing psychological studies," was sufficient to show a compelling interest, but the United States Supreme Court was not persuaded because the State "bears

the risk of uncertainty," and "ambiguous proof will not suffice." *Id.* The court of appeals concluded that, if the evidence produced by the government in *Brown* did not show a direct causal link between violent video games and harm to minors, the State's failure to produce any evidence in this case also cannot show a compelling State interest.

### C. Court of Appeals' Overbreadth Analysis

#### i. Preservation of Error

The first issue addressed by the court of appeals in its overbreadth analysis was whether Appellant preserved his overbreadth claim. *Id.* at 168 n.16. The State argued that he did not, but the court of appeals concluded otherwise. It reasoned that Appellant advanced his facial claim in his pretrial writ application and at the hearing, and it noted that the State responded to Appellant's overbreadth claim at the writ hearing. *Id.*

#### ii. The Overbreadth Doctrine

The court of appeals explained that "[t]he overbreadth doctrine is 'strong medicine' to be employed with hesitation and only as a last resort" and that, to find a law unconstitutionally overbroad, the suppression of protected speech must not only "be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* at 168. It added that a statute is not overbroad just because "it is possible to conceive of some impermissible applications"; there must be a real danger that the law will be unconstitutionally applied. *Id.* The court of appeals also stated that statutes creating criminal prohibitions of "alarming breadth" are more likely to be found unconstitutionally overbroad. *Id.*

iii.  <u>Section 43.262(b) Criminalizes a Substantial Amount of Protected Speech Within Its Plainly Legitimate Sweep</u>

The court of appeals concluded that Section 43.262(b) is unconstitutionally overbroad because, even if the State had shown it has a compelling interest in regulating child erotica, Section 43.262(b)'s suppression of protected speech is real and substantial and that the prohibition is alarming in its breadth. *Id.* at 168-69.

According to the court of appeals, Section 43.262(b) applies to all persons, including not only collectors of child erotica, but also parents, law enforcement, judicial officers, educators, and school administrators. *Id.* It also noted that consent is not a defense, so a 17-year-old child who took a lewd selfie of their clothed pubic area would be guilty under Section 43.262(b). *Id.* The court of appeals also observed that, under the State's theory that Section 43.262(b)'s criminal prohibition was enacted to protect children from sexual abuse and exploitation, the person who took the selfie would be guilty of sexually abusing and exploiting themselves, and that the indictment obtained against Netflix under Section 43.262(b) for distributing *Cuties*, a documentary about young children performing gymnastics, is proof of the real danger that Section 43.262(b) has been, and will be, unconstitutionally applied. *Id.* The court of appeals noted that the State asserted that distributing *Cuties* did not violate Section 43.262(b) because the documentary has serious literary or artistic value. *Id.* at 168. The court of appeals concluded that the "redeeming societal value" saving clause did not save the statute. *Id.* at 169. According to it, a clause exempting visual material that has serious literary, artistic,

political, or scientific value "matter[s] little when a substantial amount of protected speech is still chilled in the process." *Id.*

### III.  DISCRETIONARY REVIEW

#### A.  State's Arguments on Petition for Discretionary Review

The State argues that the court of appeals erred in four ways. First, it erroneously held that Section 43.262(b) does not regulate only child pornography. Second, it erroneously held that the statute does not survive strict scrutiny. Third, it erroneously held that Appellant preserved an overbreadth claim. Fourth, it erroneously held that the statute is overbroad. The State does not challenge the court of appeals' holdings that the visual material prohibited by Section 43.262(b) is inherently expressive, that Section 43.262(b) does not regulate obscenity, or that Section 43.262(b) is a content-based restriction subject to strict-scrutiny review.

i.  Section 43.262(b) Regulates Only Child Pornography

The State argues that the court of appeals erred when it concluded that Section 43.262(b) does not regulate only child pornography. According to it, the court of appeals should have followed the principles set out by the United States Supreme Court in *Ferber*, which deals with child pornography proscriptions. *New York v. Ferber*, 458 U.S. 747 (1982). The State asserts that, under *Ferber*, the question is whether Section 43.262(b) sufficiently describes a category of material that is not entitled to First Amendment protection, which turns on whether the prohibited conduct is adequately defined, as written or authoritatively construed, and whether the category of sexual conduct proscribed is also suitably limited and proscribed. The State argues that Section

43.262(b) satisfies those criteria because it is limited to the knowing possession of visual depictions of children engaged in a specific, limited range of lewd sexual acts.

The State contends that the court of appeals erred in reaching the opposite conclusion in three ways. First, it should not have relied on the fact that "child pornography" does not appear in Section 43.262(b). Second, it should not have relied on the fact that the material proscribed by Section 43.262(b) is not considered "sexual conduct" under the existing child-pornography statute or the legislative history. Third, it should not have relied on the fact that possession of child erotica was not a crime in Texas before the statute was enacted. The State concedes that Section 43.262(b) does not meet the definition of "sexual conduct" in the child pornography statute but argues that is not surprising given that the statutes proscribe different conduct. The State also concedes that Section 43.262(b) regulates child erotica, but it argues that child erotica is a type of child pornography.

The State also argues that, even though the court of appeals erred to rely on Section 43.262(b)'s legislative history, the legislative history supports the fact that child erotica is merely a type of child pornography, not its own category of speech. The State cites the bill analysis from the Senate Committee on Criminal Justice, and in a notice of supplemental authorities to three public hearings, two held by the House Committee on

Criminal Jurisprudence and one held by the Senate Committee on Criminal Justice.[7] But it offers no argument about how those public hearings support its position that child erotica is a type of child pornography.

ii.  Section 43.262(b) Survives Strict Scrutiny

The State argues that the court of appeals erred because, although that court agreed that the State has a compelling interest in regulating child pornography, it incorrectly concluded that the State failed to prove that it has a compelling interest in proscribing visual material depicting the lewd exhibition of the pubic area of a clothed child. According to the State, Section 43.262 was enacted to close a loophole in existing Texas child-pornography laws by regulating child erotica, and it argues that the distribution of the types of sexual depictions of juveniles in the statute is intrinsically related to child sexual abuse. The State cites as an example a photograph of a clothed four-year-old child's pubic area that appeals to the prurient interest in sex and has no serious literary, artistic, political, or scientific value. The State asserts, however, that photographs of clothed children that are merely seductive or sexually suggestive are not prohibited and

---

[7] S. Comm. on Crim. Just., Bill Analysis, Tex. H.B. 1810, 85th Leg., R.S. (2017); The Possession or Promotion of Lewd Visual Material Depicting a Child: Hearings on Tex. H.B. 1810 Before the House Comm. on Crim. Juris., 85th Leg., R.S. (Apr. 3, 2017) (video available from the House Video/Audio Services; https://house.texas.gov/video-audio/committee-broadcasts/85/) (citing 3:05:00 to 3:10:30); The Possession or Promotion of Lewd Visual Material Depicting a Child: Hearings on Tex. H.B. 1810 Before the House Comm. on Crim. Juris., 85th Leg., R.S. (Apr. 10, 2017) (video available from the House Video/Audio Services; https://house.texas.gov/video-audio/committee-broadcasts/85/) (citing 0:12:19 to 0:13:00); The Possession or Promotion of Lewd Visual Material Depicting a Child: Hearings on Tex. H.B. 1810 Before the S. Comm. on Crim. Just., 85th Leg., R.S. (May 16, 2017) (video available from Senate Audio/Video Archives; https://senate.texas.gov/av-archive.php?yr=2017&lang=en) (citing 0:14:30 to 0:17:45).

that Section 43.262(b) does not apply to all photographs of clothed children that appeal to the prurient interest in sex and have no serious redeeming value. Rather, the State contends, Section 43.262(b) is expressly limited to the knowing possession of visual material that depicts the lewd exhibition of a specific part of a clothed child where the visual material also appeals to the prurient interest in sex and has no serious literary, artistic, political, or scientific value.

The State also takes issue with the court of appeals' reliance on *Brown*. The State contends that *Brown* is distinguishable because it was about children being exposed to violent video games, special labeling restrictions, and whether there was a direct causal link between violent video games and harm to children. The State argues that the direct causal link requirement in *Brown* is inapplicable here because, while the special labeling restrictions in *Brown* were enacted to prevent the exposure of children to violent video games, the harm prevented by Section 43.262(b) is the sexual abuse and exploitation of children.

The State asserts that Section 43.262(b) is narrowly tailored because its proscription is narrower than similar statutes enacted in other states. State's Brief at 17 n.4 (citing ARIZ. REV. STAT. ANN. §§ 13-3551(5), 13-3553(A)(2) (2022); ARK. CODE ANN. §§ 5-27-302(4), 5-27-304(a)(2), 5-27-601(15), 5-27-602(a)(2) (West 2022); CONN. GEN. STAT. ANN. §§ 53a-193(13), (14), 53a-196f(a) (West 2022); 11 R.I. GEN. LAWS ANN. § 11-9-1.3(a)(4), (c)(1), (c)(6)(v) (West 2022); S.D. CODIFIED LAWS §§ 22-24A-2(2), (16), 22-24A-3 (2022); TEX. PENAL CODE §§ 43.26(a)(1), 43.25(a)(2); UTAH CODE ANN. §§ 76-5b-103(1), (10)(e), 76-5b-201(1) (West 2022); WASH. REV. CODE ANN.

§§ 9.68A.011(4)(f), 9.68A.070(2)(a) (West 2022); W. VA. CODE ANN. §§ 61-8C-1(c)(10), 61-8C-3(a) (West 2022); WYO. STAT. ANN. § 6-4-303(a)(ii), (a)(iii), (b)(iv) (West 2022)).

iii. <u>Appellant Did Not Preserve an Overbreadth Claim, and the Statute is Not Overbroad</u>

The State argues that a "restricts too much protected speech" claim and an overbreadth claim are distinct because they ask different questions, employ different tests, and can involve different party burdens. As a result, it continues, each claim must be separately preserved under Rule 33.1 of the Texas Rules of Appellate Procedure.[8] It also argues that the court of appeals erred in concluding that Appellant preserved his claim because it considered only isolated parts of the record. According to it, an examination of the entire record shows that Appellant failed to preserve his overbreadth claim. The State asserts that, even though Appellant argued in his pretrial writ application that Section 43.262(b) "regulates a substantial amount of protected speech (speech which is neither obscene nor child pornography)" and used other terms and phrases related to an overbreadth challenge, the crux of Appellant's argument was that Section 43.262(b) is an impermissible content-based restriction. The State also notes that, at the hearing, Appellant argued only that Section 43.262(b) is a content-based restriction and that he did not have the burden to prove the unconstitutionality of the statute under a strict-scrutiny

---

[8] The State Prosecuting Attorney (SPA) filed an amicus curiae brief in which it argues that we should overrule *Ex parte Lo* because it believes that this Court adopted an erroneous, special error-preservation test for First Amendment facial challenges. We decline its invitation. *Lo* did not deal with error preservation.

analysis. The State further directs us to defense counsel's comment at the hearing: "Our argument is that this statute cannot pass strict scrutiny. That's all it is." It also observes that the trial court only ruled on the "restricts too much protected speech" claim and that Appellant subsequently asked for a ruling on his void-for-vagueness claim but not his overbreadth claim.

iv.     The Court of Appeals Erred in Its Overbreadth Analysis

The State argues that the court of appeals erred in its overbreadth analysis because it did not identify Section 43.262(b)'s true legitimate sweep. According to the State, the court of appeals did not sufficiently consider the limiting elements in Section 43.262(b) and how they reduce the plain legitimate sweep of the statute. For support, the State directs us to the court of appeals' comment that the statute's savings-clause exemptions "matter little when a substantial amount of protected speech is still chilled in the process."

**B.     Appellant's Arguments on Discretionary Review**

i.     Section 43.262(b) Does Not Regulate Only Child Pornography

Appellant makes three arguments as to why the plain language of the text does not support the fact that Section 43.262(b) regulates only child pornography, nor do principles of statutory construction. First, Appellant contrasts the "Possession of Child Pornography" statute with Section 43.262(b). According to Appellant, the phrase "sexual conduct" in the "Possession of Child Pornography" statute describes depictions of child sexual conduct that are child pornography, but Section 43.262(b)'s proscription goes beyond those depictions. For example, Appellant points out that the "lewd exhibition of

the pubic area of a clothed child" is not prohibited by the "Possession of Child Pornography" statute. Appellant further asserts that the reference to "sexual conduct" in Section 43.262(b) was probably a mistake. He notes that, while the introduced version of the bill included "sexual conduct" throughout Section 43.262, those references (except the one incorporating the definition) were removed before it was enacted. Appellant also relies on the fact that an earlier version of the bill included the *Dost* factors, which are used by Texas courts to determine whether a particular proscription regulates child pornography, but he points out that those factors were later removed from the statute, which is another indication that Section 43.262(b) does not regulate only child pornography. Finally, Appellant concedes that Section 43.262(b) might proscribe only child pornography had the legislature limited Section 43.262(b)'s proscription to depictions of clothed children involved in "sexual conduct" as defined by the "Possession of Child Pornography" statute, but as currently written, Section 43.262(b) goes much further.

Second, Appellant argues that Section 43.262(b) is ambiguous because it does not explicitly state that it regulates child pornography, and that the legislative history shows that the legislature intended Section 43.262(b) to regulate previously unregulated conduct. For support, Appellant directs us to the Senate Research Center bill analysis for House Bill 1810, which was eventually enacted as Section 43.262(b). The bill analysis statement of intent states: "Current state law does not contain statutes that criminalize the possession or promotion of child erotica images. Child erotica images portray an

unclothed, partially clothed, or clothed child depicted in a sexually explicit manner." S. Research Ctr., Bill Analysis, Tex. H.B. 1810, 85th Leg., R.S. (2017).

Finally, Appellant argues that, if this Court were to conclude that Section 43.262(b) regulates only child pornography, there would be an *in pari materia* problem. Appellant asserts that, if both Section 43.262(b) and the "possession of child pornography" statute proscribe child pornography, but the definitions of child pornography are different in the statutes it is impossible to give effect to both definitions.

ii.     Section 43.262(b) Fails Strict Scrutiny

a. **Strict Scrutiny Standard of Review Applies**

Appellant argues that the parties agree that Section 43.262(b) is a content-based restriction subject to strict scrutiny and that, under that standard of review, "[t]he State may regulate the content of constitutionally protected speech to promote a 'compelling interest,' such as the physical and psychological well-being of minors, if it chooses 'the least restrictive means' to further that interest"; however, it is "not enough that the governmental ends are compelling, the means to achieve those ends must be narrowly drawn to achieve only those ends." *Ex parte Lo*, 424 S.W.3d at 19. Appellant asserts that courts begin with the presumption that the statute is unconstitutional under the strict-scrutiny standard of review, and it is the State's burden to rebut that presumption by showing there is a compelling governmental interest and that the regulation is narrowly drawn. Appellant argues the State has not rebutted the presumption.

**b. State Failed to Show It Has a Compelling Interest in Regulating Child Erotica**

According to Appellant, to show a compelling governmental interest, the government must identify an actual problem in need of solving. Appellant agrees that child pornography is a problem in need of solving because the government has an interest in protecting the physical and psychological well-being of children and that child pornography causes and memorializes the sexual abuse and exploitation of children in contravention of that interest. Therefore, it can be regulated. But, Appellant argues, Section 43.262(b) also regulates child erotica, and the State did not show that child erotica is an actual problem needing solving because it did not show that child erotica causes or memorializes the sexual abuse and exploitation of children. Stated another way, Appellant asserts that the State failed to show a direct causal link under *Brown* between the purported problem, child erotica, and the supposed solution, Section 43.262(b). Appellant contends the State mistakenly believes that the court of appeals cited *Brown* to equate the exposure of minors to violent video games with whether child erotica causes the sexual abuse or exploitation of children. That said, Appellant argues, the court of appeals relied on *Brown* because it explained how the State can satisfy its burden to show that a content-based restriction survives strict scrutiny.

Appellant also disagrees with the State that all visual material proscribed by Section 43.262(b) is necessarily exploitative. According to Appellant, this argument is just a repackaging of the State's argument that Section 43.262(b) regulates only child pornography, and Appellant objects to the State's example: a "photograph that depicts the lewd exhibition of a clothed four-year-old child's pubic area, appeals to the prurient

interest in sex, and has no serious literary, artistic, political, or scientific value is nothing if not sexually exploitive." Appellant notes that Section 43.262(b)'s proscription goes far beyond the State's example, including to a non-obscene picture of a clothed 17-year-old, even if the picture appeals to the prurient interest and lacks serious societal value.

### c. Section 43.262(b) is not narrowly drawn

Appellant argues that Section 43.262(b) is not narrowly drawn for three reasons. First, he contends that this Court has held that a statute is not narrowly drawn if the purported compelling governmental interest it serves is "already served by a separate, more narrowly drawn, statutory provision." He also asserts that, if the State is correct that Section 43.262(b) regulates only child pornography, then Section 43.262(b) is unconstitutional because the "possession of child pornography" statute is more narrowly drawn and already serves the government's interest in regulating child pornography.

Second, Appellant contends that Section 43.262(b) could be more narrowly drawn by including a more specific scienter requirement. According to Appellant, whether the law includes a scienter requirement and how specific the requirement is was important to the United States Supreme Court in *Ferber* and this Court in *Lo* and *Thompson*. But Appellant argues that, as currently written, a person need not know the lewd nature of the visual material the person knowingly possessed, accessed, or promoted; the person need only knowingly possess, access, or promote *any* visual material. Appellant concedes that courts should apply narrowing constructions to avoid constitutional violations when a statute is readily susceptible to one, but he argues that is impossible here because courts are not permitted to use a narrowing construction to rewrite a statute because that

constitutes an invasion of the legislative domain and "would sharply diminish the legislature's incentive to draft a narrowly tailored statute in the first place." Appellant also notes that a prior version of the bill required the person to know the lewd nature of the visual material, but the legislature removed that requirement before the bill was enacted. According to Appellant, employing a narrowing construction by adding another scienter requirement that the legislature already considered and removed before enacting the law would be improper.

Third, Appellant argues that Section 43.262(b) would be more narrowly tailored if it included the defenses from the "Sexual Performance by a Child" and "Possession of Child Pornography" statutes. With respect to the performance statute, Appellant directs us to the affirmative defenses that (1) the defendant was the spouse of the child at the time of the offense, (2) the conduct was for bona fide educational, medical, psychological, psychiatric, judicial, law enforcement, or legislative purposes, and (3) that the defendant is no more than two years older than the child. With respect to the "Possession or Promotion of Child Pornography" statute, Appellant directs us to the affirmative defense for law enforcement officers and school administrators. According to Appellant, the lack of any defenses in Section 43.262(b) is an alarming example of how Section 43.262(b) is not narrowly tailored.

Appellant also rejects the State's argument that Section 43.262(b) must be narrowly tailored because it applies to a narrower class of materials than statutes in other states. He asserts that statutes from other states are irrelevant, and that, upon examination, those statutes are narrower than Section 43.262(b). For example, he argues that the

Illinois law only applies to images that are combined with obscene or child pornographic material, that the Nevada statute only applies to depictions of children under the age of sixteen "as the subject of a sexual portrayal or engaging in or simulating, or assisting others to engage in or simulate, sexual conduct," and the Rhode Island law applies to visual portrayals of minors "where the visual portrayals are used for the specific purpose of sexual gratification or sexual arousal from viewing the visual portrayals." Appellant points out that the Rhode Island statute also includes an affirmative defense for people who unwittingly stumble upon the proscribed material, including law enforcement and parents, and the West Virginia law only applies to material "used for purely prurient purposes."

iii.   Appellant Preserved His Section 43.262(b) Overbreadth Claim

Appellant argues that he preserved an overbreadth claim under Rule 33.1 of the Texas Rules of Appellate Procedure. Appellant points out that his brief included a section about the "First Amendment Overbreadth Framework," which discussed the illegitimate sweep of law, and that the State appeared to understand his argument because the State's reply to Appellant's application for a pretrial writ of habeas corpus focuses almost exclusively on the overbreadth doctrine. Appellant also asserts that in a later filing, "Notice of Additional Evidence," he continued to argue about the breadth of the statute, citing the Netflix indictment. Appellant concedes that the court did not orally rule on his overbreadth argument, but he notes that the judge said that he was denying the entire application after reading all the relevant briefing.

Appellant further argues that he preserved his claim under this Court's decision in *Ex parte Nuncio*, 662 S.W.3d 903, 914 (Tex. Crim. App. 2022). In that case, this Court held that the Appellant preserved his overbreadth claim when he made arguments in his pretrial application for a writ of habeas corpus about the breadth of the statute, including giving examples of protected speech included within the legitimate sweep of the statute, and the record showed that the judge and the State were aware of the Appellant's overbreadth argument.

He also contends that courts often discuss "restricts too much protected speech" and overbreadth claims in the same analysis. For support, he cites *Lo* and *American Civil Liberties*. He argues that the Court in *Lo* discussed the strict-scrutiny standard of review under the heading, "First Amendment Overbreadth Doctrine," and in *American Civil Liberties*, the United States Supreme Court interchangeably discussed the breadth of the statute and whether it was narrowly tailored.

## IV. COGNIZABILITY

A claim is cognizable in a pretrial application for a writ of habeas corpus if the defendant prevailing would deprive the trial court of the power to proceed and result in the defendant's immediate release. *Ex parte Smith*, 185 S.W.3d 887, 892 (Tex. Crim. App. 2006). This includes an argument that the statute under which a defendant is prosecuted is unconstitutional on its face because the charging instrument is void if there is no valid statute. *Weise v. State*, 55 S. W. 3d 617, 620 (Tex. Crim. App. 2001). Appellant's claim is cognizable because he argues that Section 43.262(b) is facially unconstitutional.

## V. ANALYSIS

### A. First Amendment Facial Challenges: Impermissible Content-Based Restrictions v. Overbreadth

Before analyzing Appellant's claims, we address First Amendment facial challenges. There are two types of First Amendment facial challenges: claims that a statute (or part of a statute) is an impermissible restriction on protected speech or conduct and claims that a statute is overbroad because it violates the rights of too many third parties (the "overbreadth" doctrine).[9] They are distinct claims that must be separately preserved.[10]

One source of confusion between the two might be that courts in both types of facial challenges often refer to a statute being overbroad. In the "restricts too much protected speech" context, the word overbreadth usually refers to whether the statute is

---

[9] *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 381 n.3 (noting the difference between claims that a statute was "'overbroad' in the sense of restricting more speech than the Constitution permits and "technical 'overbreadth' claim[s]"); *Boes v. State*, 675 S.W.3d 104, 112 (Tex. App.—Amarillo 2023, pet. ref'd) (court of appeals characterized overbreadth claim as an "overbroad as applied" claim but analyzed it as an overbreadth claim); *see also Stevens*, 559 U.S. at 472 ("To succeed in a typical facial attack, [the petitioner] would have to establish 'that no set of circumstances exists under which [the law] would be valid . . . .'").

[10] *R.A.V.*, 505 U.S. at 381 n.3 (distinct claims); *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) (facial challenge to a statute cannot be brought for the first time on direct appeal because "[t]he State and the trial court should not be required to anticipate that a statute may later be held to be unconstitutional"); *but see Smith*, 463 S.W.3d at 896 (even if a defendant forfeits or waives a claim that a statute under which he was convicted is facially unconstitutional, if the statute is later adjudged unconstitutional and void, the defendant can obtain relief because the right to be free from enforcement of an unconstitutional and void criminal offense is "an absolute right or legal requirement that is so fundamental that it cannot be forfeited or waived . . .").

narrowly tailored in a strict-scrutiny analysis. *See Reno v. ACLU*, 521 U.S. 844, 879 (1997) ("The breadth of this content-based restriction of speech imposes an especially heavy burden on the Government to explain why a less restrictive provision would not be as effective as the CDA."). When courts say that a statute is overbroad in an "overbreadth doctrine" sense, they mean that there are a substantial number of unconstitutional applications in relation to the statute's plainly legitimate sweep. *See Stevens*, 559 U.S. at 473 (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. at 449 n.6). The defendant does not have to show that the law is unconstitutional in all its applications.

Another issue that might cause confusion is that the claims both deal with whether speech or conduct is protected. For instance, a party might argue that an exhibition of the clothed genitals of a child is protected under the First Amendment so long as it is not lewd, and therefore, any statute criminalizing such exhibitions is an impermissible content-based restriction. A party might also argue in an accompanying overbreadth claim that the same statute violates the First Amendment right of too many third parties, such as 17-year-old children who text or post non-lewd photographs exhibiting their clothed genitals.[11]

---

[11] These examples are merely illustrative of the close relationship between the two facial claims. This case involves lewd exhibitions, not non-lewd exhibitions.

### B. The Statute

Statutory construction is a question of law we review *de novo*. *Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011). We construe words, phrases, clauses, and sentences in their context and according to the rules of grammar. *Id.* We give effect to each word, phrase, clause, and sentence if reasonably possible, as we presume that the legislature did not include meaningless language. *Id.* If the text is plain, we give effect to that meaning unless doing so would lead to absurd results that the legislature could not have possibly intended. *Id.* If the text of the law is ambiguous, we can consult extratextual sources. *Id.*; *see* TEX. GOV'T CODE § 311.023.

The "Possession or Promotion of Lewd Visual Material Depicting a Child" statute states in relevant part,[12]

(a) In this section:

---

[12] In its 2023 regular session, the legislature amended Section 43.262(b) to add another subsection. Subsection (b–1) states:

(b–1) For purposes of conduct prohibited under Subsection (b), visual material to which that conduct applies includes a depiction of a child:

(1) who is recognizable as an actual person by the person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature; and

(2) whose image as a child younger than 18 years of age was used in creating, adapting, or modifying the visual material, including computer-generated visual material that was created, adapted, or modified using an artificial intelligence application or other computer software.

Act of May 26, 2023, 88th Leg., R.S., ch. 730, § 3, sec. 43.262, 2023 Tex. Sess. Law Serv. 1777, 1777-78 (codified at TEX. PENAL CODE § 43.262(b–1)).

(1) "Promote" and "sexual conduct" have the meanings assigned by Section 43.25 [Sexual Performance by a Child].

(2) "Visual material" has the meaning assigned by Section 43.26 [Possession or Promotion of Child Pornography].

(b) A person commits an offense if the person knowingly possesses, accesses with intent to view, or promotes visual material that:

(1) depicts the lewd exhibition of the genitals or pubic area of an unclothed, partially clothed, or clothed child who is younger than 18 years of age at the time the visual material was created;

(2) appeals to the prurient interest in sex; and

(3) has no serious literary, artistic, political, or scientific value.

\* \* \*

(d) It is not a defense to prosecution under this section that the depicted child consented to the creation of the visual material.

TEX. PENAL CODE § 43.262.

- "'Promote' means to procure, manufacture, issue, sell, give, provide, lend, mail, deliver, transfer, transmit, publish, distribute, circulate, disseminate, present, exhibit, or advertise or to offer or agree to do any of the above." Tex. Pen. Code Ann. § 43.25.

- "'Sexual conduct' means sexual contact, actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals, the anus, or any portion of the female breast below the top of the areola." Tex. Pen. Code Ann. § 43.25.

- "Visual material" means:

(A) any film, photograph, videotape, negative, or slide or any photographic reproduction that contains or incorporates in any manner any film, photograph, videotape, negative, or slide; or

(B) any disk, diskette, or other physical medium that allows an image to be displayed on a computer or other video screen and any

> image transmitted to a computer or other video screen by telephone line, cable, satellite transmission, or other method.

*See id.* § 43.262(a) (citing *id.* §§ 43.25, 43.26). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." *Id.* § 6.03(b).

### C.   "Restricts Too Much Protected Speech" Claim

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ." U.S. CONST. amend. I. The First Amendment provides broad free-speech protection, but the United States Supreme Court has allowed restrictions on the content of speech in limited areas, which "are 'of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *R.A.V.*, 505 U.S. at 382–83 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)). These limited areas include obscenity, defamation, fraud, incitement, speech integral to criminal conduct, true threats, fighting words, and child pornography. These categories are "narrow and well-understood exceptions" to the general rule that strict scrutiny applies to content-based statutes. *Turner Broadcasting System, Inc., v. FCC*, 512 U.S. 622, 641 (1994). Our analysis proceeds in four steps: First, we determine whether the First Amendment is implicated. Second, we must determine whether the expressive speech or conduct is protected by the First Amendment. Third, if we conclude that the speech or conduct is protected expression, we must determine the applicable standard of review. Fourth, we

must determine whether the statute passes constitutional muster under the applicable standard of review. We determine whether Section 43.262(b) regulates protected speech by construing the statute de novo.

To begin, we note that the parties agree that Section 43.262(b) regulates expressive conduct that implicates the First Amendment. We agree, so we turn to the second step of our analysis.

i. <u>The text of Section 43.262(b) is ambiguous, but extratextual factors show that it regulates only child pornography.</u>

The court of appeals concluded that the text of Section 43.262(b) is ambiguous about whether it proscribes child pornography because the statute does not include the phrase "child pornography" and neither does the statute's caption. When determining whether a statute regulates child pornography, inclusion of the phrase "child pornography" might be a factor to consider, but its absence is not dispositive.[13] Nonetheless, we agree that the text is ambiguous because it is impossible to determine whether a law proscribes child pornography without examining United States Supreme Court precedent.

---

[13] The court of appeals' reasoning is flawed because, under its analysis, the "Sexual Performance of a Minor" statute does not regulate child pornography because the statute does not include the phrase "child pornography" in the caption or body of the statute. *See United States v. Streett*, No. 22-2056, 2023 WL 6470730, at *8 (10th Cir. Oct. 5, 2023) ("Although the phrase "child pornography" is not used in § 2251(a), § 2251(a) is limited to conduct involving a minor and the definitions section for the chapter defines "child pornography" in part as "any visual depiction ... where-- the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct[.]").

Rather than first examining relevant United States Supreme Court precedent, the court of appeals turned to legislative history and comparisons of Section 43.262(b) to other laws, topics which we analyze below. But because we think that the most important extratextual factor is United States Supreme Court precedent, we discuss it now.

### a. United States Supreme Court Precedent

In *Miller*, the United States Supreme Court held that obscene material is an unprotected category of speech and that obscenity regulations must be limited to "works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." *Miller*, 413 U.S. at 24 ("This much has been categorically settled by the Court, that obscene material is unprotected by the First Amendment."). In a later case, the United States Supreme Court explained that states may "regulate all the hard-core pornography that [they] constitutionally [can]." *Smith v. United States*, 431 U.S. 291, 303 (1977) (discussing the continuum of possible regulations on obscenity by the states); *see also Miller*, 413 U.S. at 25 (emphasizing that it is not the United States Supreme Court's function "to propose regulatory schemes for the States").

In *Ferber*, 458 U.S. 747 (1982), a jury convicted a bookstore proprietor of knowingly promoting a sexual performance by a child under the age of sixteen by distributing material depicting such a performance. *Id.* at 751-52. Ferber argued that the statute was unconstitutional because it did not require the prohibited material to be

obscene. The New York Court of Appeals (the court of last resort in New York) agreed and reversed his conviction. *Id.* at 752.

On certiorari, the United States Supreme Court reversed the New York Court of Appeals. The United States Supreme Court stated that protecting the physical and psychological well-being of children is more compelling than the State's interest in regulating obscene pornographic material featuring adults. *Id.* at 760-61 ("The *Miller* standard, like all general definitions of what may be banned as obscene, does not reflect the State's particular and more compelling interest in prosecuting those who promote the sexual exploitation of children."). It also noted that the value of child pornography is "exceedingly modest, if not de minimis." *Id.* at 762. The Court held that, like obscenity, child pornography is a category of speech that the First Amendment does not protect. *Id.* at 764. Recognizing the more compelling interest, the Supreme Court concluded that States, "are entitled to greater leeway in the regulation of pornographic depictions of children," *id.* at 756, and it modified the *Miller* obscenity test: "A trier of fact need not find that the material appeals to the prurient interest of the average person; it is not required that sexual conduct portrayed be done so in a patently offensive manner; and the material at issue need not be considered as a whole." *Id.* at 764. In concluding that child pornography is an unprotected category of speech, the United States Supreme Court observed that the distribution of materials depicting sexual activity by children is "intrinsically related to the sexual abuse of children" in two ways. *Id.* at 759. First, the material is a permanent record "of the children's participation and the harm to the child is exacerbated by their circulation." *Id.* Second, to effectively prevent the sexual

exploitation of minors, "the distribution network for child pornography must be closed . . . ." *Id.*

While the United States Supreme Court concluded that the States have greater leeway in regulating child pornography, it also emphasized that there are "limits on the category of child pornography." *Id.* at 764. The Court explained that the prohibited conduct must be "adequately defined by the applicable state law, as written or authoritatively construed" and that the prohibited conduct must be limited to works that visually depict sexual conduct by children because the prohibited conduct "must correlate to the harm to be prevented." *Id.* It also explained that the types of prohibited "sexual conduct" must be suitably limited and described and that criminal responsibility cannot be imposed without some element of scienter. *Id.* at 765. The Supreme Court upheld the New York law because it met those criteria. That law adequately defined the prohibited conduct and included a scienter element: "A person is guilty of promoting a sexual performance by a child when, knowing the character and content thereof, he produce[d], direct[ed] or promote[d] any performance which include[d] sexual conduct by a child less than sixteen years of age." *Id.* at 751. It also suitably limited and described the prohibited sexual conduct as "actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sado-masochistic abuse, or lewd exhibition of the genitals." *Id.* at 765.

In *Osborne v. Ohio*, 495 U.S. 103 (1990), a jury convicted Osborne of possessing four photographs depicting a nude child posed in a sexually explicit position. *Id.* at 107. Osborne was convicted under the "Illegal use of a minor in nudity-oriented material or

performance" statute, which generally prohibited the possession or viewing of any material or performance showing a minor who is not the person's child or ward in a state of nudity. *Id.* The Supreme Court acknowledged that it had previously held that depictions of nudity are protected under the First Amendment, and consequently, the statute as written might regulate protected expression. But it concluded that Ohio's statute survived scrutiny because the Supreme Court of Ohio authoritatively construed the statute as prohibiting "the possession or viewing of material or performance of a minor who is in a state of nudity, *where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals*, and where the person depicted is neither the child nor the ward of the person charged."[14] *Id.* at 113. The United States Supreme Court concluded that, in narrowing the statute to require not just nudity but a lewd exhibition of nudity or a graphic focus on the genitals, the Supreme Court of Ohio ensured that the prohibited sexual conduct was suitably limited and described: "[T]he Ohio Supreme Court avoided penalizing persons for viewing or possessing innocuous photographs of naked children." *Id.* at 113-14. The United States Supreme Court also noted that it had upheld similar language—"lewd exhibition of the genitals"—in *Ferber* as suitably

---

[14] The Ohio Supreme Court reasoned that "the scope of the prohibited conduct narrows significantly" in light of the "proper purposes" exceptions. *State v. Young*, 525 N.E.2d 1363, 1367 (1988), *rev'd*, 495 U.S. 103 (1990). It also noted that "[t]he clear purpose of these exceptions . . . is to sanction the possession or viewing of material depicting nude minors where that conduct is morally innocent." *Id.* at 1367. However, the Ohio Supreme Court explained, "the only conduct prohibited by the statute is conduct which is not morally innocent, i.e., the possession or viewing of the described material for prurient purposes." *Id.* at 1367-68. Its construction of the statute, according to it, limited the statute's prohibited conduct so as not "to outlaw all depictions of minors in a state of nudity, but rather only those depictions which constitute child pornography." *Id.* at 1368.

limited and described. *Id.* at 114. It further rejected Justice Brennan's attempt in his dissenting opinion to distinguish the Ohio statute from the one at issue in *Ferber* because the Ohio statute specified areas of the body (e.g., the pubic area), not just specific body parts (e.g., the genitals). *Id.* at 114 n.11. According to the majority, the distinction between areas of the body and specific body parts is constitutionally insignificant; the crucial question is simply whether the depiction is lewd. *Id.*

The Supreme Court also discussed the scienter requirement. It stated that the statute violated *Ferber* as written, because it contained no scienter element, but it said that the narrowing construction cured any defect because it required the person commit the offense recklessly. *Id.* at 129. That is, the person must *recklessly* possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals, unless certain exemptions or exceptions apply. *See id.*

### b. This Case

The questions we are presented with, based on *Ferber* and its progeny, are whether Section 43.262(b) adequately defines the prohibited conduct as the law is written or authoritatively construed, whether the prohibited conduct is limited to works that visually depict sexual conduct by children, whether the definition of the prohibited sexual conduct is suitably described and limited, and whether Section 43.262(b) satisfies the *Ferber* scienter requirement. Section 43.262(b) meets these criteria.

First, Section 43.262(b) adequately defines the prohibited conduct—possessing, accessing with intent to view, or promoting visual material that depicts the lewd

exhibition of the genitals or pubic area of an unclothed, partially clothed, or clothed child who is younger than 18 years old at the time the visual material was created, and the material appeals to the prurient interest in sex and has no serious literary, artistic, political, or scientific value. Appellant does not appear to dispute that the prohibited conduct is adequately defined. Rather, he argues that the prohibited conduct goes too far because it regulates protected expression.

Second, Section 43.262(b) is limited to visual depictions of children engaging in sexual conduct—lewd exhibitions of the genitals or pubic area whether unclothed, partially clothed, or fully clothed. Appellant claims that the "sexual conduct" requirement is not met because Section 43.262(b) does not expressly proscribe "sexual conduct." But a statute need not use the term sexual conduct. It is sufficient if the statute describes sexual conduct, so long as the prohibited sexual conduct is adequately described and suitably limited. Appellant's real complaint seems to be that the proscribed sexual conduct is not suitably limited because it applies to lewd exhibitions of a 17-year-old child's clothed pubic area.[15] We disagree.

The United States Supreme Court upheld a child-pornography statute defining a child as under 18 years old, and it has held that whether a statute regulates child pornography does not turn on whether the law focuses on specific body parts or areas of

---

[15] Appellant does not complain that the statute also extends to lewd exhibitions of a child's *partially clothed* genitals or pubic area.

the body. [16] *Osborne*, 495 U.S. at 114 n.11; *see United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994) (agreeing with the court of appeals that federal statutes defining a minor as under 18 years old does not render a federal child-pornography overbroad or vague). The remaining question then is whether a statute that proscribes lewd exhibitions of the clothed pubic area of a child infringes on protected expression. For the reasons we explain below, we conclude that it does not.

Appellant argues that Section 43.262 does not regulate child pornography because "a nonobscene picture of a clothed seventeen-year-old, posted online by that child, or texted to their significant other, simply does not harm the child even if the picture appeals to the prurient interest and lacks serious societal value." Appellant's argument appears to be that, because pictures like that do not harm the child, Section 43.262's proscription is not intrinsically related to the sexual abuse and exploitation of children, and if Section 43.262's proscription is not intrinsically related to the sexual abuse and exploitation of children, it must not regulate child pornography. But we conclude that a lewd exhibition of a child's clothed pubic area is in fact intrinsically related to the sexual abuse and

---

[16] We note that Section 2256 of Title 18 of the United States Code defines a lascivious exhibition of the pubic area of any person as prohibited sexual conduct. 18 U.S.C. § 2256(2)(A)(v). Thus, child-pornography statutes proscribing lewd exhibitions of the pubic area are not unknown to the law, and the federal statute to our knowledge has not been successfully challenged on that basis.

exploitation of children. We are guided by the Third Circuit's decisions in *Knox*. *See United States v. Knox*, 977 F.2d 815 (3d Cir. 1992), *vacated*, 510 U.S. 939.[17]

In *Knox 1*, the court of appeals explained why it believed that a lewd exhibition of a child's clothed genitals is intrinsically related to the sexual abuse and exploitation of children. The harm Congress and the Texas Legislature "attempted to eradicate by enacting child pornography laws is present when a photographer unnaturally focuses on a minor child's clothed genital area with the obvious intent to produce an image sexually arousing to pedophiles." *Id.* at 822. Further, it stated, when a "child is treated as a sexual object and the permanent record of this embarrassing and humiliating experience produces the same detrimental effects to the mental health of the child as a nude portrayal. The rationale underlying the statute's proscription applies equally to any lascivious exhibition of the genitals or pubic area whether these areas are clad or completely exposed." *Id.*

Appellant also argues that Section 43.262(b) creates an odd situation because consent to the creation of the visual material is not a defense, even if a child self-produces visual material prohibited by Section 43.262. Thus, he argues that, under the theory that lewd exhibitions of a 17-year-old child's clothed pubic area are intrinsically related to the sexual abuse and exploitation of children, a 17-year-old child who takes a selfie featuring a lewd exhibition of his or her clothed pubic area would render the child

---

[17] The judgment in *Knox* was vacated for the Third Circuit Court of Appeals to consider a brief filed by the United States Solicitor General. *Knox*, 977 F.2d at 815 (3d Cir. 1992), *vacated*, 510 U.S. 939.

both the abuser and the abused. Although Appellant's point is well-taken, we are not convinced that this is an absurd result that the legislature could not possibly have intended. We are guided by *United States v. Streett*, 434 F. Supp. 3d 1125 (D.N.M. 2020), *aff'd*, 2023 WL 6470730. In that case, the court had to determine whether teenage sexting was constitutionally protected speech. *Id.* at 1129. That court concluded that it is not. *Id.* at 1188. It stated that, if teenagers have a constitutional right to create sexually explicit visual material and share that material because the behavior is not inherently harmful, then *Ferber*, and probably *Osborne*, do not apply, and if *Osborne* does not apply, the State "could not prohibit adults from possessing self-produced, sexually explicit photographs of fifteen-year-olds." *Id.* at 1188 (citing *Osborne*, 495 U.S. at 110-12).

The court also reasoned that the policy reasons why child pornography is an unprotected category of speech would be thwarted if self-produced teenage sexting were constitutionally protected. It explained that,

> First, protecting self-produced child pornography would inhibit efforts to eradicate coercive, adult-made child pornography. The Supreme Court characterized this interest as one of "surpassing importance," and accordingly affirmed banning child pornography's possession as a valid and direct means of curtailing its production . . . . Prohibiting child pornography's possession reduces its demand, and thereby curtails its existence and the child abuse that it causes. Protecting self-produced child pornography would render it difficult to enforce bans on exploitive, adult-produced child pornography, as authorities may not be able to distinguish between to the two based on images' content alone. The market for child pornography does not distinguish between self-produced images and those that adults produce. Approximately 5.4% of all child pornography on the internet is self-produced, such that protecting teenage sexting would likewise render it difficult for authorities to distinguish between the images that [the defendant] seeks to protect and those that adult pedophiles

produce. Similarly, pedophiles use child pornography -- including self-produced child pornography -- to entice other children to participate in similar conduct, thereby perpetuating the abuse that renders child pornography unprotected. "When offenders use these images, whether self-produced or otherwise, the damage is the same." Self-produced child pornography, accordingly, perpetuates the same secondary harms as adult-produced child pornography, and thus falls under *Ferber*'s umbrella.

Further, as discussed, self-produced child pornography is not harmless in and of itself, and its production allows for a "permanent record of the children's participation." The evidence . . . demonstrates that there is no bright line between self-produced, experimental sexting and that which results from coercion or abuse. Some teenagers who engage in normative, experimental sexting come to regret that behavior later, and may suffer anxiety or other harm as a result. [One expert,] Kenney-Noziska[,] attributes this to the fact that, once the sext is sent, it is no longer in the teenager's control, leaving the sender vulnerable to coercion. Between eight and twelve percent of sexts are forwarded without the sender's consent, regardless [of] whether the initial sext was sent voluntarily in love and good fun, or as the result of abuse or coercion. Once leaked or posted to the internet, sexts are difficult to retrieve or erase regardless of the sexter's initial motivation, making the "sexual exploitation or . . . abuse . . . even harder to recover from." Nor are the teenage sexters themselves often aware of where the line is. Given teenagers' latent prefrontal cortex development, they are susceptible to being coerced or induced into producing sexts despite believing they are "engaging in perfectly normal behavior." Teenagers are prone to believe that they are engaging in consensual behavior, despite a romantic partner or internet acquaintance coercing them. Because of latent brain development, "[y]ounger teenagers don't appreciate the risks of sexting," even those who are "in a good relationship." Teenage sexting -- self-produced child pornography -- is thus intrinsically related to the adult-produced child pornography that [the defendant] seeks to distinguish. Given these harms, the Supreme Court concluded that legislatures can ban child pornography's production and possession without regard to whether the material amounts to obscenity. "The value of permitting live performances and photographic reproductions of children engaged in lewd sexual conduct is exceedingly modest, if not de minimis."

*Id.* at 1188-89 (internal citation omitted). We are persuaded by the court's logic and conclude that it applies equally to Section 43.262 and its provision that consent of the depicted child is not a defense. The material proscribed by Section 43.262 and that

Appellant complains about—lewd exhibitions of the clothed pubic area of a child —is not protected expression merely because the child is 17 years old, or the pubic area is clothed. Even if an exhibition of the clothed genitals or pubic area of a 17-year-old child were protected expression, an issue we need not and do not resolve, a *lewd* exhibition of the 17-year-old child's clothed pubic area is not, which is all that Section 43.262 proscribes.[18]

Finally, we conclude that Section 43.262 satisfies the United States Supreme Court's requirement that a child-pornography law must include some element of scienter on the part of the defendant. *See Ferber*, 458 U.S. at 765. "The federal constitution affords the states broad authority to narrowly construe a statute to avoid a constitutional violation" so long as the statute is reasonably susceptible to one. *Thompson*, 442 S.W.3d at 339. Narrowing constructions, however, cannot be used to rewrite a statute. *Id.* A statute is susceptible to a narrowing construction only if the text of the statute is ambiguous. *Id.*

In *Ferber*, the United States Supreme Court upheld the New York child-pornography statute, in part, because it satisfied the requirement that a child-pornography statute must include some element of scienter. But it is unclear from the Court's decision how it construed the requirement because it only stated that the statute "expressly

---

[18] In a "restricts too much protected speech" analysis, we are not concerned with how the statute operates in practice. Nonetheless, we note that we are not aware of any prosecutions, and Appellant has not directed us to any, of 17-year-old children who self-produced visual material prohibited by Section 43.262 since its enactment in 2017.

includes a scienter requirement." We believe based on a close examination of the opinion that it construed the statute as requiring proof that a person produced, directed, or promoted a performance knowing that the performance included sexual conduct featuring a child—someone under 16 years old.

In *Osborne*, the statutory text did not include a scienter requirement. But the United States Supreme Court upheld the statute based on the Supreme Court of Ohio's construction of the statute reading a reckless culpable mental state into the statute. As construed, the statute made it an offense for a person to recklessly possess or view any material or performance that shows a minor or impaired person who is not the person's child or ward in a state of nudity, unless an exception applied. The Supreme Court of Ohio explained that the reckless scienter also attached to the circumstance that "the defendant had some notice of the character of the material possessed."

In *X-Citement Video, Inc.*, the United States Supreme Court examined a federal law prohibiting the knowing "interstate transportation, shipping, receipt, distribution, or reproduction of visual depictions of minors engaged in sexually explicit conduct." *Id.* at 65-66. The statute stated in relevant part:

(a) Any person who—

   (1)   knowingly transports or ships in interstate or foreign commerce by any means including by computer or mails, any visual depiction, if—

      (A)   the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

      (B)   such visual depiction is of such conduct;

(2)  knowingly receives, or distributes, any visual depiction that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution in interstate or foreign commerce or through the mails, if—

    (A)  the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

    (B)  such visual depiction is of such conduct;

*     *     *

shall be punished as provided in subsection (b) of this section.

*Id.* at 67-68. The issue was whether "'knowingly' in subsections (1) and (2) modifie[d] the phrase 'the use of a minor' in subsections (1)(A) and (2)(A)." The United States Supreme Court concluded that it did even though its construction was not "the most natural grammatical reading." *Id.* at 68. According to the Supreme Court, to hold otherwise would produce absurd results. *Id.* at 69. It observed that such a construction would "sweep within the ambit of the statute actors who had no idea that they were even dealing with sexually explicit material." *Id.* The Supreme Court gave three examples.

First, "a retail druggist who returns an uninspected roll of developed film to a customer . . . ." that contained visual depictions of children engaged in sexually explicit conduct. *Id.* Second, "a new resident of an apartment might receive mail for the prior resident and store the mail unopened. If the prior tenant had requested delivery of materials" depicting children engaged in sexually explicit conduct, "his residential successor could be prosecuted for 'knowing receipt' of such materials." *Id.* Third, a mail "courier who delivers a box in which the shipper has declared the contents to be 'film'

'knowingly transports' such film." *Id.* The United States Supreme Court explained that its construction, even though not the most grammatical reading of the statute, was also supported by its precedent "interpreting criminal statutes to include broadly applicable scienter requirements, even where the statute by its terms does not contain them." *Id.* at 70. The Supreme Court's precedent "instructs that the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct." *Id.* at 72. It also noted that the Court was required to "read the statute to eliminate [constitutional] doubts so long as such a reading is not plainly contrary to the intent of Congress," concluding that its construction was not plainly contrary to the intent of Congress. *Id.* at 78.

This Court has addressed similar issues. In *McQueen v. State*, this Court explained that there are three "conduct elements" in the Penal Code for a criminal offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances of the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989). We also explained that a culpable mental state must apply to the essential conduct element or elements of an offense. *Id.* Examining the statute at issue in *McQueen*—unauthorized use of a motor vehicle—we stated that it is not a "nature of conduct" offense because the act of driving a car is not a crime except under a certain circumstance. *Id.* We concluded the statute did not only require proof that a person intentionally or knowingly operated another's boat, airplane, or motor-propelled vehicle, but it also required proof that the person knew that the operation was done without the effective consent of the owner. *Id.* at 603-04. The confusion, we explained, stemmed from the fact that "knowingly" in the

statute only modified the operation requirement, not the circumstance that the operation must be done without the effective consent of the owner. *Id.* at 604. We were concerned that such a reading effectively made the offense a strict liability crime. *Id.* We have referred to this type of statutory ambiguity as a question of "'how far down the sentence' the Legislature intended for the [scienter] requirement . . . 'to travel.'" *Delay v. State*, 465 S.W.3d 232, 246 (Tex. Crim. App. 2014).

We faced the same problem in *Delay*, in which we had to construe the "money laundering" statute. *Id.* at 234. As written, the text of the statute only required a person to knowingly conduct, supervise, or facilitate a transaction. *Id.* at 235. The question was whether the "knowing" scienter requirement applied not only to conducting, supervising, or facilitating a transaction, but also to the circumstance that the conduct involved the proceeds of criminal activity. *Id.* at 246. We concluded that "knowing" applied to the transaction element *and* the circumstance that the conduct must involve the proceeds of criminal activity. *Id.* at 247. Relying on *McQueen*, we stated that, to conclude otherwise, would criminalize otherwise innocent conduct—knowingly conducting, supervising, or facilitating any kind of transaction. *Id.*

Turning back to this case, Appellant argues that, as written, the "knowingly" scienter requirement in Section 43.262(b) modifies only the conduct elements of possesses, accesses with intent to view, or promotes. According to him, this means that a person is guilty merely for knowingly possessing, accessing with intent to view, or promoting any kind of visual material. Thus, in his view, anyone who has bought a movie is guilty, anyone who has knowingly watched a YouTube video is guilty, and companies

that promote their television shows and movies, like Netflix and Amazon Video, are guilty, too.

Section 43.262 is a "circumstances of the conduct" offense involving multiple circumstances, each of which must be true before a person can be held criminally liable. The question is which circumstance or circumstances the person must know. Must the person know that the visual material depicts the lewd exhibition of the genitals or pubic area of an unclothed, partially clothed, or clothed child? Does the person have to know that the visual material featured someone who was a child when the visual material was created? Does the person need to know that the visual material appeals to the prurient interest in sex, that it has no serious literary, artistic, political, or scientific value, or both? Based on precedent from the United States Supreme Court and this Court and the structure of Section 43.262(b), we think that the legislature intended for the knowing scienter requirement to attach to each attendant circumstance. That is, to be guilty under Section 43.262(b), a person must knowingly possess, access with intent to view, or promote visual material knowing that the visual material depicts the lewd exhibition of the genitals or pubic area of an unclothed, partially clothed, or clothed child. The person must also know that the child was under 18 years old when the material was created, know that the material appeals to the prurient interest in sex, and know that the material has no serious literary, artistic, political, or scientific value.

If knowingly modifies any of the circumstance of the offense, which we conclude that it must, it only makes sense that it would apply to each attendant circumstance. Section 43.262(b) begins, "A person commits an offense if the person knowingly

possesses, accesses with intent to view, or promotes visual material that: . . . ." Following the colon, the attendant circumstances are listed in a sequential, three-part list. Within that list, the word "and" follows the second attendant circumstance, strongly suggesting that each attendant circumstance should be treated similarly when determining how far down the statute "knowingly" attaches. This narrowing construction does not rewrite the statute, it resolves any constitutional concerns that Section 43.262 would violate the *Ferber* scienter requirement, and it is supported by precedent from the United States Supreme Court and this Court.

ii.     Court of Appeals' Analysis of Legislative History

The court of appeals heavily relied on the legislative history for Section 43.262 in concluding that it regulates protected conduct. We conclude that it erred in doing so, given the circumstances of this case. The court of appeals is correct that the Senate bill analysis states that Section 43.262 was intended to close a loophole in existing laws by regulating child erotica. The bill analysis also indicates that the legislature treated child pornography and child erotica as distinct types of material. The recorded committee meetings state the same. But legislative intent is just that, intent. Despite what the legislature "intends" when it enacts or amends a law, it might not realize that intent because the text of the law does not actually support that interpretation. We have no doubt that the legislature enacted Section 43.262 to prevent the sexual abuse and exploitation of children. That much is clear. But whether Section 43.262 regulates child pornography is a legal question that turns on United States Supreme Court First Amendment precedent.

iii.  Court of Appeals' Comparisons of the Prohibited Sexual Conduct in Section 43.262 with the "Sexual Performance of a Child" and "Possession or Promotion of Child Pornography" Statutes

The court of appeals determined that Section 43.262(b) does not regulate child pornography in part because the prohibited conduct in Section 43.262(b) is broader than the prohibited sexual conduct in the "Sexual Performance of a Child" and "Possession of Promotion of Child Pornography" statutes. Appellant also relies on this. The court of appeals and Appellant note that the prohibited sexual conduct in Section 43.262(b) applies to a lewd exhibition of a child's clothed pubic area. *Compare* TEX. PENAL CODE §§ 43.25(a)(2), 43.26(b)(2) *with id.* § 43.232(b). The court of appeals and Appellant are correct. But implicit in the court of appeals' analysis and Appellant's argument is that the legislature had already proscribed all the child pornography that it constitutionally could.[19] *See Smith*, 431 U.S. at 302-03 (explaining that legislatures can prohibit no obscenity, some obscenity, or as much obscenity as the Constitution permits). We disagree with this assumption. Whether Section 43.262(b) proscribes only child pornography, as we noted earlier, turns on the text of the statute and relevant precedent. That the defined prohibited sexual conduct is broader in Section 43.262(b) than in the "Sexual Performance of a Child" and "Possession or Promotion of Child Pornography" statutes is not controlling.

---

[19] For example, the legislature could prohibit only the possession of child pornography, not the promotion of it, or it could prohibit only sexual conduct involving a lewd exhibition of the unclothed genitals. The legislature is free to proscribe no child pornography, some child pornography, or all child pornography.

iv.  Appellant's Remaining Arguments

Appellant argues, like the court of appeals, that Section 43.262(b) does not regulate only child pornography because the prohibited conduct in Section 43.262(b) goes beyond the definition of "sexual conduct," which is the only definition of child pornography in Texas. Appellant concedes that the legislature left a reference to "sexual conduct" in Section 43.262(b), but he argues that this was probably a mistake. Appellant also highlights the fact that an earlier version of the bill included the *Dost* factors,[20] which are used by Texas courts to determine whether a particular depiction is lewd for child pornography purposes, but that the legislature removed them from the final bill. We have already rejected the argument that Section 43.262(b) must not regulate only child pornography because the conduct described in Section 43.262(b) is broader than the

---

[20] The six *Dost* factors are:

(1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;

(2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

(3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;

(4) whether the child is fully or partially clothed, or nude;

(5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; and

(6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*State v. Bolles*, 541 S.W.3d at 140 (Tex. Crim. App. 2017).

definition of "sexual conduct." And even if Appellant is correct that the legislature

mistakenly left a reference to "sexual conduct" in Section 43.262, we do not construe

statutes based on whether the legislature *might* have made a mistake while drafting a bill.

Further, while it is true that the initial bill incorporated the *Dost* factors and that they

were later removed, little information can be gleaned from that fact. Maybe the

legislature removed the *Dost* factors because it knew that at least some Texas courts had

already endorsed them. We simply do not know. *See Romo v. State*, 663 S.W.3d 716, 720

(Tex. Crim. App. 2022); *State v. Bolles*, 541 S.W.3d 128, 141-43 (Tex. Crim. App. 2017)

(citing *Perkins v. State*, 394 S.W.3d 203, 205 (Tex. App.—Houston [1st Dist.] 2012, pet.

ref'd); *Tovar v. State*, 165 S.W.3d 785, 788 (Tex. App.—San Antonio 2005, no pet.);

*Alexander v. State*, 906 S.W.2d 107, 108 (Tex. App.—Dallas 1995, no pet.)).

Appellant also argues that Section 43.262(b) cannot regulate only child

pornography because at least some of the provisions of Section 43.262(b) cannot be

reconciled with the "Possession or Promotion of Child Pornography" statute. According

to him, the statutes cannot regulate the same speech—child pornography—because the

prohibited conduct in each statute is not coextensive. As we have already explained,

however, the fact that the conduct prohibited by the "Possession or Promotion of Child

Pornography" statute and Section 43.262(b) are not identical does not mean that only one

of them can regulate child pornography.

Finally, Appellant argues that Section 43.262(b) is not narrowly tailored because it

contains no defenses, unlike the "Sexual Performance of a Child" and "Possession of

Promotion of Child Pornography" statutes. Thus, for example, a law-enforcement officer

or school administrator could be prosecuted under Section 43.262(b) but not the "Sexual Performance of a Child" or "Promotion or Possession of Child Pornography" statutes. He further notes that a person would be guilty under Section 43.262(b) even if the visual material depicts the person's spouse, the person is not more than two years older than the child, or the conduct was for "a bona fide educational, medical, psychological, psychiatric, judicial, law enforcement, or legislative purpose." Appellant makes a valid point. But the lack of defenses in Section 43.262(b) does not inexorably lead to the conclusion that Section 43.262(b) is not narrowly tailored, and whether defenses should be included is an issue for the legislature, not this Court.

v.    Conclusion

We conclude that Section 43.262(b) does not violate the First Amendment because it regulates only an unprotected category of speech, child pornography.[21]

### D.  Overbreadth

i.    Preservation of Error

A claim that a statute is an unconstitutional content-based restriction on free speech is distinct from a claim that the breadth of a statute sweeps up within its legitimate

---

[21] Our First Amendment analysis is modeled on our analysis in *Thompson*. *Thompson*, 442 S.W.3d at 334. In *Thompson*, we concluded that visual material is inherently expressive. *Id.* at 336-37. We then addressed whether, despite regulating inherently expressive conduct, the statute was constitutional because the specific-intent requirement sufficiently limited its reach. *Id.* at 337-39 (rejecting the State's argument that "the intent element of the statute places the otherwise expressive activity of photography and visual recording outside the protection of the First Amendment"). Here, we reaffirm that visual material is inherently expressive but, unlike *Thompson*, conclude that the statute passes muster under the First Amendment because it regulates an unprotected category of expressive speech—child pornography.

sweep a substantial amount of protected speech. *Thompson*, 442 S.W.3d at 349.

(concluding that the "Improper Photography" statute was an impermissible content-based

restriction *and* that it was overbroad because it violated the rights of too many third

parties). As we noted before, both types of facial claims can be forfeited if not

preserved.[22] The court of appeals concluded that Appellant preserved an overbreadth

claim because he raised it in his brief, the claim was argued at the hearing, and the State

recognized Appellant's overbreadth argument and responded to it. We agree with the

court of appeals on these points, but Appellant never obtained a ruling on his objection.

TEX. R. APP. P. 33.1(a)(2)(A); *see Nuncio*, 662 S.W.3d at 914 (appellant preserved his

overbreadth claim when he raised it pretrial and the trial court overruled appellant's

objection). The most that can be said is that the trial court denied the entire pretrial

application. But we think that general denial did not preserve Appellant's overbreadth

claim under these circumstances.

    The trial court ruled that Section 43.262(b) was not an invalid content-based

restriction. Appellant then asked the trial court to rule on his vagueness claim. Appellant

did not ask the trial court to rule on his overbreadth argument, and the trial court never

did. We hold that Appellant failed to preserve his overbreadth claim for appellate review.

---

[22] *Nuncio*, 662 S.W.3d at 914-15 (overbreadth); *compare Karenev*, 281 S.W.3d at 435 (a First Amendment facial challenge to a statute that has not be declared void is subject to procedural default), *with Smith v. State*, 463 S.W.3d 809, 896 (Tex. Crim. App. 2015) (a defendant convicted under a void statute has an absolute right to have his conviction set aside for the first time on appeal or in a postconviction writ application).

## VI. CONCLUSION

Because Section 43.262 of the Texas Penal Code is not an unconstitutional restriction on protected speech, we reverse the judgment of the court of appeals and remand this case to the court of appeals to address the remaining points of error.

Delivered: July 31, 2024

Publish